**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Christopher KATOR, Defendant–
Appellant.**

**No. 97–1264.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1997.

Decided Oct. 27, 1997.

Patrick M. Collins (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

Robert A. Loeb (argued), Chicago, IL, for Defendant–Appellant.

Before BAUER, RIPPLE, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Christopher Kator, who pled guilty to an indictment charging that he conspired to import heroin into the United States, says his sentence is too long. He can prevail on his claim, however, only if he can convince us that his plea agreement with the government isn't worth the paper it's written on. We think it is, so we reject his appeal and affirm the sentence he received last January in the district court.

Kator, Corinne Manns, Tony Sobowale, and Jumoke Dada were indicted as coconspirators for agreeing to import a little over 2 kilograms of heroin into the United States from the Czech Republic. Pursuant to a written plea agreement, Kator pled guilty to the charge. The sentencing judge, Ruben Castillo, determined that Kator's adjusted offense level was 31 [he distributed 2 kilos of heroin (+32); was a manager (+2); and he accepted responsibility (–3)—to arrive at 31]

which put his sentencing range at 108 to 135 months. The charge to which he pled guilty, however, carried a statutory minimum sentence of 10 years, and that term, of course, trumps the guidelines if they are lower.

Under the plea agreement, the government agreed to file a § 5K1.1 motion for a downward departure. The departure would be such that the ultimate sentence would equal "one-half of the low-end of the applicable sentencing guidelines range or one-half of the statutory minimum sentence provided for under 21 U.S.C. § 960(b)(1)(A), whichever is higher."

The statutory minimum being higher, the government moved for a downward departure to 5 years, and that was the sentence Judge Castillo imposed. Nevertheless, Kator now argues that the guidelines were inappropriately calculated. When this issue was argued in the district court Judge Castillo was incredulous. At one point he said: "Okay, so what is it that really is at issue here, given the plea agreement? Or are you saying that you want to specifically attack the government's 5K1.1 motion . . . ." The answer was no. On top of that, Kator has never asked to withdraw his guilty plea.

The facts to which Kator pled guilty are, in summary, as follows. In September 1995 Jumoke Dada approached Kator about importing heroin. She agreed to pay Kator and Sobowale $20,000 to secure a courier to transport the dope. They in turn recruited Corinne Manns to travel to Prague, Czech Republic, to pick up a package and bring it back. For this trick, she was to be paid $7,000 plus expenses. Kator arranged for Manns' round trip air fare to Prague and gave her $800 cash for spending money, along with a phone number to reach him while she was overseas. Though it is not noted in the plea agreement, he apparently also helped her obtain her passport. Kator drove her to Chicago's O'Hare field for the trip on September 28, 1995.

On October 1 Kator contacted Manns in Prague to say that the heroin would not be delivered as planned and that she would have to remain there for an extra day. Kator then received cash from Dada, which he sent via Western Union to Manns.

On October 4 a woman approached Manns in Prague to say that she had a package for her, but that she wanted $3,500 before she would hand it over. Manns notified the conspirators in the Windy City and Dada went about straightening things out. The next day, the woman knocked on the door of Manns' hotel room and gave her a bag with 2.061 kilograms of heroin hidden in a secret compartment.

Upon learning of the delivery, Kator arranged for Manns' flight home to Chicago, via London and St. Louis. However, mechanical problems forced a landing in Boston, where her bag tested positive for heroin and she was set upon by the police.

Manns quickly agreed to cooperate with the authorities. She was accompanied by undercover agents when she arrived in Chicago. Kator went to O'Hare to see Manns arrive and conduct general surveillance. He saw Manns deplane, made eye contact with her, but did not speak to her. She left the airport in a taxi, accompanied by the agents. The drug dealers' plan was for Sobowale to meet Manns at the Bismark Hotel and drive her and the heroin to Kator's home. Kator in turn would then deliver the heroin to Dada.

When the taxi reached the Bismark Hotel Manns got out and walked toward Sobowale's vehicle. Sobowale, however, was in the hotel; when he returned to his car, something he saw inspired him to turn and attempt to flee; he was apprehended.

At the direction of the agents, Manns placed an electronic page to Kator, who did not know that the scheme was being sunk at the Bismark. He returned the page, and Manns asked him to pick her up at the hotel. He agreed, and after driving around the hotel for 10 minutes he stopped to pick her up. Manns at that moment was standing on the sidewalk with her luggage, including the bag of the heroin. The agents then announced their presence. Kator tried to flee but was nabbed.

The plea agreement specifically says that Kator conspired to import 2.061 kilograms of heroin. It contains preliminary calculations

under the guidelines, setting the offense level at 32 and recommending a reduction for acceptance of responsibility and an enhancement for Kator's role in the offense—though he reserved the right to argue that the enhancement should not apply.

It also states that the government would move for a downward departure of half the statutory minimum or the lower point of the guideline range, whichever is higher. So what's the beef? We just don't know.

■ Kator argues that he thought the transaction was to involve somewhere in the area of 500 grams of heroin, not 2 kilos, so his offense level should have been 28. He argues that in order for him to be sentenced for the conduct of his coconspirators, that conduct must be reasonably foreseeable and in furtherance of jointly undertaken criminal activity. *United States v. Edwards*, 945 F.2d 1387 (7th Cir.1991). The sentencing judge, Kator also says, is required to make specific findings. But the "reasonably foreseeable" analysis is not applicable to a one-transaction conspiracy when the defendant is a direct participant, *United States v. Velasquez*, 67 F.3d 650, 654 (7th Cir.1995), so that argument is DOA. So is the "specific findings" argument based on this record.

The guideline calculations could only conceivably matter in this case if the sentencing range came out higher than one-half the statutory minimum so that instead of 5 years he received 61 months or more.

Plus, as to the amount, he pled guilty to importing over 2 kilograms. And he does not ask to set aside his plea.

■ As for the findings, it's true that Judge Castillo did not go out of his way to detail the amount involved, but that was because Kator pled guilty to conspiring to import a precise amount—2.061 kilos. The judge said that based on the presentence report he could have found more, but that it was not necessary. "I just don't see the point" is what he said. We would have said the same thing.

■ Kator also challenges the 2 points he got for being a manager. And although it does not matter, at least on this one, he

reserved the right to argue the issue in his plea agreement. But the argument is a loser because he supervised Manns.

[4] Finally, Kator tries to get help from § 5C1.2 of the guidelines, the safety valve option. Section 5C1.2 provides that the court may sentence under the guidelines without regard to a statutory minimum if certain conditions are met, including that a defendant not have acted as a manager. If he was, he does not qualify. We think he was, and he doesn't.

Finally, Kator was sentenced way below the 10 statutory minimum, though the route to his sentence was through a motion for a downward departure, rather than § 5C1.2. So again, where's the beef?

All in all, Kator pled guilty and got a big break. He had a different lawyer when the plea agreement was entered: before sentencing, the present lawyer took over. But there is nothing at all here on which to base a conclusion that he got a bad deal. Actually, the last thing Kator would want is to have the plea agreement scrapped and the case sent back for trial where he would face the statutory minimum with no agreement for a downward departure. That would turn his 5 into at least a 10, and then he would be here again arguing ineffective assistance of counsel.

AFFIRMED.